# NO. 25-1973

---

# United States Court of Appeals
# for the
# Sixth Circuit

---

## RIGHT TO LIFE OF MICHIGAN; CELINA ASBERG; GRACE FISHER; ANDREA SMITH; JOHN HUBBARD,

*PLAINTIFFS - APPELLANTS,*

v.

## GRETCHEN WHITMER; DANA NESSEL; JOCELYN BENSON, in their official capacities,

*DEFENDANTS - APPELLEES.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
HONORABLE PAUL L. MALONEY
CIVIL CASE NO. 1:23-cv-01189

---

# APPELLANTS' BRIEF

---

ROBERT JOSEPH MUISE, ESQ.
AMERICAN FREEDOM LAW CENTER
P.O. BOX 131098
ANN ARBOR, MICHIGAN 48113
(734) 635-3756

WILLIAM WAGNER, ESQ.
GREAT LAKES JUSTICE CENTER
5600 W. MOUNT HOPE HIGHWAY, STE. 2
LANSING, MICHIGAN 48917
(517) 643-1765

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTERESTS

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and 6th Cir. R. 26.1, Plaintiffs-Appellants Right to Life of Michigan, Celina Asberg, Grace Fisher, Andrea Smith, and John Hubbard state the following:

Plaintiff-Appellant Right to Life of Michigan is a nonprofit corporation. It does not have a parent corporation and no publicly held company owns 10% of its stock. Plaintiffs-Appellants Asberg, Fisher, Smith, and Hubbard are private individuals.

No party is a subsidiary or affiliate of a publicly owned corporation. There are no publicly owned corporations, not a party to the appeal, that have a financial interest in the outcome.

AMERICAN FREEDOM LAW CENTER

/s/ *Robert J. Muise*
Robert J. Muise, Esq.

# REASONS WHY ORAL ARGUMENT SHOULD BE PERMITTED

Pursuant to Rule 34(a) of the Federal Rules of Appellate Procedure and 6th Cir. R. 34(a), Plaintiffs-Appellants respectfully request that this Court hear oral argument. This case presents for review important legal issues regarding standing to advance a federal constitutional challenge to a controversial amendment to the Michigan Constitution that was passed via voter initiative, bypassing the people's elected representatives.

Oral argument will assist this court in reaching a full understanding of the issues presented and the underlying facts. Moreover, oral argument will allow the attorneys for both sides to address any outstanding legal or factual issues that this Court deems relevant.

AMERICAN FREEDOM LAW CENTER

/s/ *Robert J. Muise*
Robert J. Muise, Esq.

# TABLE OF CONTENTS

**Page**

DISCLOSURE OF CORPORATE AFFILIATIONS
AND FINANCIAL INTERESTS ............................................................................i

REASONS WHY ORAL ARGUMENT SHOULD BE PERMITTED ................... ii

TABLE OF AUTHORITIES ...................................................................................v

BACKGROUND ....................................................................................................1

STATEMENT OF JURISDICTION.......................................................................4

STATEMENT OF THE ISSUE FOR REVIEW ....................................................5

STATEMENT OF THE CASE...............................................................................5

I.      Procedural Background ...............................................................................5

II.     Statement of Facts.......................................................................................6

        A.      Article I, § 28 (Proposal 3) and Its Effects...........................................6

        B.      Plaintiffs ...........................................................................................21

                1.      Right to Life of Michigan .........................................................21

                2.      Parents ......................................................................................24

III.    Decision Below..........................................................................................25

STANDARD OF REVIEW ..................................................................................28

SUMMARY OF THE ARGUMENT ...................................................................29

ARGUMENT .......................................................................................................30

I.      Plaintiffs Have Standing to Advance a Parental Rights Claim ....................30

A.    Parental Rights Are Protected by the Fourteenth Amendment. ..........30

B.    Plaintiffs Have Suffered Cognizable Injuries that Are Fairly Traceable to § 28 and Likely to Be Redressed by the Requested Relief .................36

CONCLUSION ....................................................................47

CERTIFICATE OF COMPLIANCE......................................49

CERTIFICATE OF SERVICE ..............................................50

ADDENDUM: DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS....................................................................51

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page**

*ACLU v. NSA*,
493 F.3d 644 (6th Cir. 2007) ...............................................................37

*Allen v. Wright*,
468 U.S. 737 (1984)...........................................................................36

*Arnold v. Bd. of Educ.*,
880 F.2d 305 (11th Cir. 1989) .............................................................32

*Bowsher v. Synar*,
478 U.S. 714 (1986)...........................................................................37

*Blunt v. Lower Merion Sch. Dist.*,
767 F.3d 247 (3d Cir. 2014).................................................................36

*Cutler v. United States HHS*,
797 F.3d 1173 (2015)....................................................................29, 37

*DeBoer v. Snyder*,
772 F.3d 388 (6th Cir. 2014) .................................................................3

*Deboer v. Snyder*,
973 F. Supp. 2d 757 (E.D. Mich. 2014)...............................................45

*Denver Area Educ. Telcoms. Consortium v. FCC*,
518 U.S. 727 (1996).....................................................................41, 46

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022).......................................................................1, 15

*Doe v. Irwin*,
615 F.2d 1162 (6th Cir. 1980) .............................................................33

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000)......................................................................42, 46

*Gettman v. DEA,*
290 F.3d 430 (D.C. Cir. 2002) ..............................................................38

*Havens Realty Corp. v. Coleman,*
455 U.S. 363 (1982)...............................................................................43

*Hile v. Mich.,*
86 F.4th 269 (6th Cir. 2023) ....................................................26, 38, 42

*Hooker v. Weathers,*
990 F.2d 913 (6th Cir. 1993) ................................................................43

*Hunter v. Erickson,*
393 U.S. 385 (1969)..........................................................................41, 46

*Kanuszewski v. Mich. HHS,*
927 F.3d 396 (6th Cir. 2019) ...........................................................31, 32

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992)..........................................................................37, 42

*Meyer v. Neb.,*
262 U.S. 390 (1923)..........................................................................30, 31

*Murray v. United States Dep't of Treasury,*
681 F.3d 744 (6th Cir. 2012) ................................................................28

*Nietzke v. Williams,*
490 U.S. 319 (1989) ..............................................................................28

*Northland Fam. Plan. Ctr. v. Nessel,*
Case No. 24-000011-MM, 2025 Mich. Ct. Cl. LEXIS 1 (May 13, 2025) ........13, 46

*Obergefell v. Hodges,*
576 U.S. 644 (2015)........................................................................3, 6, 45

*Ohio Nat'l Life Ins. Co. v. United States,*
922 F.2d 320 (6th Cir. 1990) ................................................................28

*Parham v. J.R.*,
442 U.S. 584 (1979)..................................................................32

*Pennell v. San Jose*,
485 U.S. 1 (1988)......................................................................39

*People v. Ambrose*,
895 N.W.2d 198 (Mich. Ct. App. 2016) ....................................7

*People v. Bricker*,
208 N.W.2d 172 (Mich. 1973) ...................................................7

*People v. Kurr*,
654 N.W.2d 651 (Mich. Ct. App. 2002) ....................................7

*Pierce v. Soc'y of Sisters*,
268 U.S. 510 (1925)..............................................................30, 32

*Planned Parenthood v. Casey*,
505 U.S. 833 (1992)....................................................................1

*Prince v. Mass.*,
321 U.S. 158 (1944)..................................................................31

*Romer v. Evans*,
517 U.S. 620 (1996)..........................................2, 38, 39, 40, 41

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
547 U.S. 47 (2006)....................................................................37

*Shelby Advocates for Valid Elections v. Hargett*,
947 F.3d 977 (6th Cir. 2020) ...................................................26

*Stafford v. IBM Corp.*,
78 F.4th 62 (2d Cir. 2023) ........................................................38

*Steel Co. v. Citizens for Better Env't*,
523 U.S. 83 (1988)..............................................................38, 39

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014)..................................................................36

*Troxel v. Granville*,
530 U.S. 57 (2000)....................................................................31

*Warth v. Seldin*,
422 U.S. 490 (1975)..................................................................36

## **Constitutions**

Colo. Const. art. II, § 30b..........................................................2

Mich. Const. art. I, § 25 ............................................................3

Mich. Const. art. I, § 28 .....................................................*passim*

Mich. Const. art. II, § 9 ............................................................23

Mich. Const. art. VIII, § 2....................................................38, 42

U.S. Const. art. III, § 2 .............................................................36

U.S. Const. art. VI, cl. 2...........................................................2

## **Rules**

Fed. R. Civ. P. 12(b) ................................................................28

## **Statutes**

28 U.S.C. § 1291 .......................................................................4

28 U.S.C. § 1331 .......................................................................4

28 U.S.C. § 1343 .......................................................................4

42 U.S.C. § 1983 .................................................................4, 5, 21

Mich. Comp. Laws. § 37.2102...................................................19

Mich. Comp. Laws § 333.1071 ....................................................................10

Mich. Comp. Laws § 333.1091 ....................................................................10

Mich. Comp. Laws § 333.2835 ....................................................................11

Mich. Comp. Laws § 333.2836 ..............................................................10, 11

Mich. Comp. Laws § 333.2837 ....................................................................11

Mich. Comp. Laws § 333.9141 ....................................................................11

Mich. Comp. Laws § 333.17014 ..................................................................11

Mich. Comp. Laws § 333.17015 ..........................................................10, 13

Mich. Comp. Laws § 333.17016 ..................................................................11

Mich. Comp. Laws § 333.20115 ..........................................................10, 11

Mich. Comp. Laws § 333.22224 ..................................................................11

Mich. Comp. Laws § 333.20181 ..................................................................11

Mich. Comp. Laws § 333.20183 ..................................................................11

Mich. Comp. Laws § 388.1766 ..............................................................11, 12

Mich. Comp. Laws § 390.1591 ....................................................................11

Mich. Comp. Laws §§ 550.541-550.551 ....................................................10, 11

Mich. Comp. Laws § 722.851 ....................................................................10

Mich. Comp. Laws § 722.901 ....................................................10, 23, 35, 43

Mich. Comp. Laws § 750.14 ......................................................................10

Mich. Comp. Laws § 750.15 ......................................................................10

Mich. Comp. Laws § 750.40...................................................................................10

Mich. Comp. Laws § 750.90h................................................................................11

Mich. Comp. Laws § 750.322...............................................................................10

Mich. Comp. Laws § 750.323................................................................................11

Mich. Comp. Laws § 750.520................................................................................11

## **Other**

https://umsi580.lsait.lsa.umich.edu/s/abortion-access-mi/page/1990-s..................23

https://www.legislature.mi.gov/Laws/MCL?objectName=MCL-ACT-211-OF-1990
.................................................................................................................................23

https://www.michiganpublic.org/health/2023-09-06/family-says-catholic-medical-
clinic-denied-transgender-girl-care..........................................................................20

https://www.upi.com/Archives/1990/09/12/Michigan-Legislature-passes-veto-
proof-parental-consent-abortion-law/2053653112000/  ...................................23

# BACKGROUND

"*Roe* was egregiously wrong from the start. Its reasoning was exceptionally weak, and the decision has had damaging consequences." *Dobbs v. Jackson Women's Health Org*, 597 U.S. 215, 231 (2022). In other words, no legal or factual basis ever existed for concluding that abortion was a right protected by the U.S. Constitution. *Roe* is void *ab initio*. *Dobbs* also expressly overruled *Planned Parenthood v. Casey*, 505 U.S. 833 (1992). *Dobbs*, 597 U.S. at 231 ("We hold that *Roe* and *Casey* must be overruled.").

Finding no fundamental right to abortion in the U.S. Constitution, the issue was returned to the states—a natural consequence of the *Dobbs* decision. As the Court stated, "It is time to heed the Constitution and return the issue of abortion to the people's *elected representatives*." *Dobbs*, 597 U.S. at 232 (emphasis added). Allowing "elected representatives" to resolve controversial issues is how a republican form of government works. Our Founders did not create a "democracy" as they were fearful of allowing any form of tyranny, including the tyranny of the majority. Indeed, the word "democracy" is not used in either the Declaration of Independence or the U.S. Constitution. Accordingly, *Dobbs* did not license the states to enact an extraordinary and broad super-right to "reproductive freedom" outside of the normal legislative process (and immunizing it from any legislative action) via a state constitutional amendment that itself violates the U.S. Constitution. We are in federal

court today as a result.

Rather than heeding the advice of the Supreme Court (and the Constitution) to return the abortion issue to the "people's elected representatives," the proponents of Proposal 3 launched a massive propaganda campaign, overwhelmingly funded by out-of-state money, that deceived the voters into believing that Proposal 3 would merely "Restore *Roe*." (R.23, First Am. Compl. ["FAC"] ¶¶ 76, 78, PageID.159). It does no such thing. Proposal 3's exceedingly broad effects are pernicious and unconstitutional. In particular, Proposal 3, which is now Article I, § 28 of the Michigan Constitution, undermines the fundamental rights of parents protected by the Fourteenth Amendment.

The U.S. Constitution is "the supreme Law of the Land." U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land."). Accordingly, federal courts have recognized the propriety of a federal constitutional challenge to a statewide referendum passed by voters resulting in an amendment to a state constitution. For example, in 1992, Colorado adopted a state constitutional amendment via a statewide referendum. The proposal known as Amendment 2 (Colo. Const. art. II, § 30b) prohibited all legislative, executive, or judicial action at any level of state or local government designed to protect homosexual persons. In *Romer v. Evans*, 517 U.S. 620 (1996), the U.S. Supreme Court held that Amendment 2 violated the equal protection guarantee of the

Fourteenth Amendment on rational basis grounds (there was no fundamental right nor suspect class implicated, unlike in this case). More recently, Michigan's marriage amendment (Article I, § 25), which was adopted via a statewide referendum (by a larger majority than Proposal 3)[1] and which provided that marriage was between one man and one woman, was invalidated by the U.S. Supreme Court on due process and equal protection grounds, as it "excluded same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples." *Obergefell v. Hodges*, 576 U.S. 644, 675-76 (2015).

As the Court noted in *Obergefell*, "fundamental rights may not be submitted to a vote; they depend on the outcome of no elections." *Obergefell*, 576 U.S. at 677. In the final analysis, there is nothing inviolable about a state constitutional amendment passed by voters, nor are there any barriers to challenging such amendments, including § 28, on federal constitutional grounds.[2] As set forth below, Plaintiffs-Appellants Right to Life of Michigan, Celina Asberg, Grace Fisher, Andrea Smith, and John Hubbard (hereinafter also referred to collectively as "Plaintiffs") have standing to advance this parental rights challenge to § 28 under the Fourteenth Amendment.

---

[1] The Michigan marriage amendment passed by a greater percentage of the vote (58.6%) than did Proposal 3 (56.7%). (R.23, FAC ¶ 75, PageID.159).

[2] Defendant-Appellee Nessel herself spearheaded the legal challenge to Michigan's marriage amendment. *See DeBoer v. Snyder*, 772 F.3d 388, 395 (6th Cir. 2014), *rev'd*, *Obergefell v. Hodges*, 576 U.S. 644 (2015) (listing Dana Nessel as counsel for the plaintiffs).

# STATEMENT OF JURISDICTION

On November 8, 2023, Plaintiffs filed this action, alleging violations arising under the United States Constitution and 42 U.S.C. § 1983. (R.1). On February 20 2024, Plaintiffs filed a First Amended Complaint, alleging similar violations. (R.23, FAC, PageID.141-87). The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

On March 19, 2024, Defendants filed a motion to dismiss (R.29, Defs.' Mot. to Dismiss), and brief in support (R.30, Defs.' Br. in Supp. of Mot. to Dismiss). On April 10, 2024, Plaintiffs responded to Defendants' motion. (R.34, Pls.' Resp. to Defs.' Mot. to Dismiss). Defendants filed their reply on April 24, 2024. (R.35, Defs.' Reply in Supp. of Mot. to Dismiss).

Well over a year later, on September 30, 2025, the district court issued its Opinion and Order Granting Defendants' Motion to Dismiss, dismissing Plaintiffs' claims on standing grounds. (R.46, Op. & Order, PageID.441-463). That same day, the district court entered judgment in Defendants' favor, terminating the action. (R.47, J., PageID.464).

On October 28, 2025, Plaintiffs filed a timely Notice of Appeal. (R.48, Notice of Appeal, PageID.465-66).

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

**STATEMENT OF THE ISSUE FOR REVIEW**

Whether Plaintiffs have standing to raise a parental rights challenge under the Fourteenth Amendment to Article I, section 28 of the Michigan Constitution (Proposal 3).

**STATEMENT OF THE CASE**

## I.    Procedural Background.

On November 8, 2023, Plaintiffs Right to Life Michigan, Celina Asberg, Grace Fisher, Andrea Smith, and John Hubbard (along with other individual and organizational plaintiffs) commenced this action. (R.1). On February 20, 2024, Plaintiffs filed a First Amended Complaint, alleging claims arising under the First Amendment (free exercise and freedom of speech) and the Fourteenth Amendment (equal protection, parental rights, and due process) to the United States Constitution, the Guarantee Clause of the United States Constitution, and 42 U.S.C. § 1983. (R.23, FAC, PageID.141-87).

On March 19, 2024, Defendants filed a motion to dismiss (R.29, Defs.' Mot. to Dismiss), and brief in support (R.30, Defs.' Br. in Supp. of Mot. to Dismiss). On April 10, 2024, Plaintiffs responded. (R.34, Pls.' Resp. to Defs.' Mot. to Dismiss). Defendants replied on April 24, 2024. (R.35, Defs.' Reply in Supp. of Mot. to Dismiss).

On September 30, 2025, the district court issued its Opinion and Order Granting

Defendants' Motion to Dismiss, dismissing all claims on standing grounds. (R.46, Op. & Order, PageID.441-463). That same day, the district court entered judgment in Defendants' favor, terminating the action. (R.47, J., PageID.464).

On October 28, 2025, Plaintiffs Right to Life of Michigan, Celina Asberg, Grace Fisher, Andrea Smith, and John Hubbard filed a timely Notice of Appeal. (R.48, Notice of Appeal, PageID.465-66). Plaintiffs are appealing the issue of whether they have standing to advance a parental rights challenge to Article I, § 28 of the Michigan Constitution (Proposal 3).

## II.    Statement of Facts.

### A.    Article I, § 28 (Proposal 3) and Its Effects.

On November 8, 2022, the Michigan voters passed Proposal 3 by a simple majority (56.7% supported the proposal and 43.3% opposed it). Proposal 3 passed by a smaller majority (56.7% in favor) than the Michigan marriage amendment (58.6% in favor), which was eventually struck down by the U.S. Supreme Court in *Obergefell v. Hodges*, 576 U.S. 644 (2015). (R.23, FAC ¶ 75, PageID.159).

The primary political action committee that supported the passage of Proposal 3, Reproductive Freedom for All, contributed $47,835,464.79 to the passage of this proposal. At least $34,000,000 of this funding came from out-of-state sources. Consequently, most of the funding for the passage of Proposal 3 came from out-of-

state supporters who wanted to influence the election and thus the policy outcome in Michigan with regard to this proposal.  (R.23, FAC ¶ 76, PageID.159).

In comparison, the primary political action committee that opposed Proposal 3, Citizens to Protect MI Women and Children, contributed $21,065,062.08 to defeating this proposal.  Only a fraction (less than $300,000) of this funding came from out-of-state sources.  (R.23, FAC ¶ 77, PageID.159).

The proponents of Proposal 3 launched a massive propaganda campaign, overwhelmingly funded by out-of-state money, that deceived Michigan voters into believing that this proposed constitutional amendment (§ 28) would merely "Restore *Roe*."  It does no such thing.  (R.23, FAC ¶ 78, PageID.159-60).

Proposal 3 is contrary to the strong public policy to protect innocent human life that prevailed in Michigan for many decades.  *People v. Kurr*, 654 N.W.2d 651, 654 (Mich. Ct. App. 2002) ("[F]etuses are worthy of protection as living entities as a matter of public policy."); *People v. Bricker*, 208 N.W.2d 172, 175 (Mich. 1973) ("It is the public policy of the state to proscribe abortion."); *see also People v. Ambrose*, 895 N.W.2d 198, 200 (Mich. Ct. App. 2016) ("[W]e respect the right of a fetus to calm and peaceful environmental circumstances without threat of harm to them.") (quoting trial court).  (R.23, FAC ¶ 79, PageID.160).

Proposal 3 added § 28 to Article I of the Michigan Constitution.  Section 28 states as follows:

(1) _Every_ individual has a fundamental right to _reproductive freedom_, which entails the right to make and effectuate decisions about _all matters_ relating to pregnancy, including _but not limited_ to _prenatal care_, childbirth, postpartum care, contraception, sterilization, abortion care, miscarriage management, and infertility care. An individual's right to reproductive freedom shall not be denied, burdened, nor infringed upon unless justified by a compelling state interest achieved by the least restrictive means.

Notwithstanding the above, the state may regulate the provision of abortion care after fetal viability, provided that in no circumstance shall the state prohibit an abortion that, in the professional judgment of an attending health care professional, is medically indicated _to protect the life or physical or mental health of the pregnant individual_.

(2) _The state shall not discriminate in the protection or enforcement of this fundamental right_.

(3) _The state shall not penalize, prosecute, or otherwise take adverse action against an individual based on their actual, potential, **perceived**, or alleged pregnancy outcomes, including but not limited to miscarriage, stillbirth, or abortion. Nor shall the state penalize, prosecute, or otherwise take adverse action against someone for aiding or assisting a pregnant individual in exercising their right to reproductive freedom with their voluntary consent._

(4) For the purposes of this section:

A state interest is "compelling" _only_ if it is for the limited purpose of protecting the health of an individual seeking care, consistent with accepted clinical standards of practice and evidence-based medicine, _and does not infringe on that individual's autonomous decision-making_.

"Fetal viability" means: the point in pregnancy when, in the professional judgment of an attending health care professional and based on the particular facts of the case, there is a significant likelihood of the fetus's sustained survival outside the uterus _without the application of extraordinary medical measures_.

(5) *This section shall be self-executing*.  Any provision of this section held invalid shall be severable from the remaining portions of this section.

Mich. Const. art. I, § 28 (emphasis added) (§ 28 or Section 28); (R.23, FAC ¶ 80, PageID.160).

Section 28 expressly provides that "[*e*]*very* individual," which includes minors, "has a fundamental right to *reproductive freedom*, which entails the right to make and effectuate decisions about *all matters* relating to pregnancy, including *but not limited to* prenatal care, childbirth, postpartum care, contraception, sterilization, abortion care, miscarriage management, and infertility care."  This broad right to "reproductive freedom" necessarily includes decisions involving gender and "gender reassignment" surgeries and other harmful procedures as well as decisions by minors to engage in sexual intercourse with adults.  There are no exceptions.  (R.23, FAC ¶ 81, PageID.161).

The provisions of § 28 are "self-executing."  That is, the provisions do not need any legislation to implement them or any other action for them to become effective. (R.23, FAC ¶ 82, PageID.161).

Section 28(2) mandates the "state," which includes all departments of the executive branch and all state actors, including state-operated hospitals (*e.g.*, University of Michigan Public Health System), county hospitals, and public schools,

including public school health clinics, to "protect[]" and "enforce[]" this very broad "fundamental right" to "reproductive freedom." (R.23, FAC ¶ 83, PageID.161).

As noted in the ballot proposal, the passage of Proposal 3 (now § 28) invalidated numerous state laws, including many laws that protect women, children, parental rights, and the right of conscience, among others. (R.23, FAC ¶ 84, PageID.162).

The following is a list of some of the Michigan laws that were invalidated or otherwise repealed, nullified, or revised following the passage of § 28: Mich. Comp. Laws § 750.14 (criminal ban on abortion); Mich. Comp. Laws § 750.15 (abortion, drugs, or medicine; advertising or sale to procure; misdemeanor); Mich. Comp. Laws § 750.40 (private diseases; conceptive preventatives; publication of cures); Mich. Comp. Laws § 750.322 (manslaughter; willful killing of unborn quick child); Mich. Comp. Laws § 722.901, *et seq*. (***The Parental Rights Restoration Act***); Mich. Comp. Laws §§ 333.17015 & 333.17015a (informed consent laws, including 24 hour waiting period and prohibition on coercive abortions); Mich. Comp. Laws § 333.20115 (clinical licensing); Mich. Comp. Laws §§ 550.541 to 550.551 (abortion insurance opt-out); Mich. Comp. Laws §§ 333.1071, *et seq*. (Born Alive Infant Protection Act); Mich. Comp. Laws § 333.2836 (disposal of fetal remains); Mich. Comp. Laws § 333.1091 (family planning or reproductive services; allocation of funds); Mich. Comp. Laws §§ 722.851, *et seq*. (The Michigan Surrogate Parenting Act); Mich.

Comp. Laws § 750.90h (Partial Birth Abortion Ban Act); Mich. Comp. Laws § 750.520b (statutory rape law); Mich. Comp. Laws § 388.1766 (public school abortion policy prohibiting referral of a student for abortion); Mich. Comp. Laws §§ 333.2835 & 333.2837 (abortion reporting and abortion complication reporting); Mich. Comp. Laws §§ 333.20181 & 333.20183 (hospital and physician immunity from having to perform abortions); Mich. Comp. Laws § 390.1591, *et seq.* (establishes "the pregnant and parenting student services fund"); Mich. Comp. Laws § 333.9141 (authorizing grants for ultrasound equipment, but prohibiting grants for elective abortion use). (R.23, FAC ¶ 99 [emphasis added], PageID.165-66).

Based on the mandate imposed by § 28, members of the Michigan Legislature passed and Defendant Whitmer signed into law the Reproductive Health Act, which codified the provisions of § 28 and affirmatively repealed certain laws, including Mich. Comp. Laws § 750.90h (the ban on partial-birth abortion); Mich. Comp. Laws § 750.323 (quick child law); Mich. Comp. Laws §§ 550.541-550.551 (abortion insurance opt-out); Mich. Comp. Laws § 333.2835 (abortion reporting); Mich. Comp. Laws § 333.2836 (disposal of fetal remains); Mich. Comp. Laws § 333.2837 (abortion complication reporting); Mich. Comp. Laws § 333.17014 (legislative findings for informed consent); Mich. Comp. Laws § 333.17016 (partial birth abortion ban) (health code); and Mich. Comp. Laws §§ 333.20115 & 333.22224 (clinic licensing). As a result of § 28, Michigan legislators are powerless to repeal the Reproductive Health

Act or pass laws seeking to mitigate the harm caused by this law. (R.23, FAC ¶ 100, PageID.166).

As a direct result of § 28, the Michigan Legislature recently and affirmatively repealed the law (Mich. Comp. Laws § 388.1766) that prevented school personnel from referring a student for an abortion or assisting a student with obtaining an abortion, thereby causing harm to minors and further undermining parental rights. (R.23, FAC ¶ 101, PageID.166).

By the express language of § 28, which grants broad "reproductive freedom" to "every individual," including minors, the Michigan Legislature is without power to restrict statutory rape. Under § 28, a minor is deemed legally capable of consenting to, *inter alia*, abortion, sexual intercourse, "gender reassignment," the use of contraception, and sterilization. Those who aid and assist the minor can do so with impunity because any efforts by the state to deny, burden, or infringe the "individual's autonomous decision-making" in the area of "reproductive freedom" run afoul of § 28. (R.23, FAC ¶ 102, PageID.167).

Section 28 lessens the standard of care for the health of a woman, including minors, harmed by an abortion (or anyone aiding or assisting with the abortion) for which she gave her "voluntary consent," whether or not the consent was informed. (R.23, FAC ¶ 104, PageID.167).

Section 28 prevents the state from enacting or enforcing laws that protect women, including minors, from the harm of abortion, including laws that require informed consent or waiting periods, laws that regulate the safety and credentials of abortion clinics, and laws that regulate the licensing and credentials of abortionists, among others. (R.23, FAC ¶ 105, PageID.167).

On May 13, 2025, the Michigan Court of Claims in *Northland Family Planning Center v. Nessel*, Case No. 24-000011-MM, 2025 Mich. Ct. Cl. LEXIS 1 (May 13, 2025), struck down under § 28 several longstanding regulations passed by the Michigan legislature to protect the health and safety of women seeking abortions.[3] More specifically, the Michigan court "conclude[d] that MCL 333.17015(1), (2)(d)-(g) and (i)-(j), (3)-(10), (11)(a)-(h), (13)-(14), and (18)-(20)—which encompass the mandatory 24-hour waiting period, the mandatory uniform informed consent, the ban on APCs [advanced practice clinicians] providing abortion care, and other statutory subsections inextricably intertwined with these provisions—are unconstitutional." 2025 Mich. Ct. Cl. LEXIS 1 at *2. This decision confirms that § 28 causes the very

---

[3] A copy of this state court decision was provided to the district court by Plaintiffs in their notice of supplemental authority as this decision was rendered after the briefing on Defendants' motion to dismiss was concluded but before the district court rendered its decision. (R.41, Pls.' Notice of Supplemental Authority, Page ID.386-90). The district court didn't mention this case in its decision. Also, it should not go unnoticed that Defendant Nessel is the first-named defendant in this state court action arising under § 28. *See Northland Family Planning Ctr.,* 2025 Mich. Ct. Cl. LEXIS 1 at *6 ("AG Nessel concurs with plaintiffs that the challenged laws do not pass constitutional strict-scrutiny muster."). She was a proper party in the state case arising under § 28, and she is a proper party in this federal action challenging § 28.

harms alleged in the First Amended Complaint.

Section 28 disproportionally harms the black community, including minors. Blacks comprise approximately 13.5% of Michigan's population, yet 54% of all abortions performed on Michigan women in 2022 were on black women. The black community remains a target of the abortion industry, which often locates surgical abortion centers in poor black neighborhoods, as is the case in Michigan. In fact, of the 14 surgical abortion centers in Michigan, eight are located in black neighborhoods. (R.23, FAC ¶¶ 106-07, PageID.167-68).

Section 28 prevents the Michigan Legislature from regulating or prohibiting abortion practices that target an individual (including minors) based on race, sex, or disability. (R.23, FAC ¶ 108, PageID.168).

Section 28 permits any method for aborting a child as any regulation on abortion, including the methods used to procure the abortion, is subject to the "individual's autonomous decision-making." In other words, the desire to procure an abortion trumps any regulation of abortion and those who provide it. (R.23, FAC ¶ 112, PageID.168).

As a result of § 28, the Michigan Legislature, and thus the people of Michigan, including Plaintiffs, through their duly elected representatives and lobbying efforts (Plaintiff Right to Life of Michigan), are unable to advocate for the regulation of abortion (or sterilization, contraception, and a host of other matters involving

"reproductive freedom") in any way, specifically including advocating for laws that protect minors from the harms of such procedures. Even if the state can present a "compelling interest" for legislation that regulates abortion for the health and safety of the mother or for the protection of minors or for any other legitimate interest, this interest is trumped by the "autonomous decision" to have an abortion or the exercise of any of the other broadly construed "reproductive freedoms." Never has such a super-right been created under a state constitution—a right that removes the legislative branch from the process of governing and thus deprives Plaintiffs of their fundamental rights, including parental rights. (R.23, FAC ¶ 113, PageID.168-69).

The U.S. Supreme Court has identified legitimate state interests for regulating abortion (and thus legislating in this area of the law), including, among others, "respect for and preservation of prenatal life at all stages of development . . .; the protection of maternal health and safety; the elimination of particularly gruesome or barbaric medical procedures; the preservation of the integrity of the medical profession; the mitigation of fetal pain; and the prevention of discrimination on the basis of race, sex, or disability." *Dobbs,* 597 U.S. at 301 (internal quotations and citations omitted). Section 28 does not permit the Michigan Legislature (or Plaintiff Right to Life of Michigan) to advance any of these legitimate interests (including those interests deemed compelling) for regulating abortion as any such interests are subordinate to the newly-created, super-right to "reproductive freedom" and the

"autonomous decision-making" of individuals to exercise that right. (R.23, FAC ¶ 114, PageID.169).

Section 28 prohibits the state from punishing or holding liable anyone who harms a woman (including minors) through abortion so long as there was voluntary consent at some point. Thus, a woman (or a minor) who is substantially harmed by a person performing the abortion—whether the person is qualified or not or uses safe procedures or not—has no state protection under the law to prevent or remedy any harm to her if she provided voluntary consent to the procedure because § 28 effectively immunizes any person performing an abortion from such liability under the circumstances. Section 28(3) expressly prohibits the state from "*penalize[ing], prosecut[ing], or otherwise take[ing] adverse action against someone for aiding or assisting a pregnant individual in exercising their right to reproductive freedom with their voluntary consent*." No exceptions exist. Consequently, women (including minors) who are or could become pregnant are harmed by § 28. (R.23, FAC ¶ 115, PageID.169-70).

Section 28 withdraws from women (including minors) specific legal protections for the injuries caused by abortion or other "reproductive" matters. (R.23, FAC ¶ 116, PageID.170).

Pursuant to § 28, a woman (including a minor) could "voluntarily consent" to a coat-hanger abortion and would have no state protection or remedy for the harm

caused by the person performing the abortion. The same woman (minor) could "voluntarily consent" to having a non-physician "aid or assist" (*i.e.*, perform) the abortion (*e.g.*, having a boyfriend perform a coat-hanger abortion on a kitchen table), and the woman (minor) would have no state protection or remedy under the law should she be harmed in the process. (R.23, FAC ¶ 118, PageID.170).

Section 28 permits women (including minors) to seek abortions from non-physicians as the state is without power to restrict the performance of abortions to licensed medical professionals as the women's "autonomous decision-making" trumps all attempts to regulate abortion. (R.23, FAC ¶ 119, PageID.170).

Pursuant to § 28, *anyone* can assist a pregnant woman (including a minor) with an abortion with her "voluntary consent." The state is unable to deny, burden, or infringe upon the "right" to an abortion as all state interests, including those that are compelling, are overridden by an individual's "right" to choose abortion (*i.e.*, the individual's "autonomous decision-making"). This essentially legalizes coat-hanger and back-alley abortions by non-qualified individuals. (R.23, FAC ¶ 120, PageID.171).

In addition, since the state cannot prosecute, penalize, or otherwise take adverse action against another for assisting a pregnant individual (including a minor) with an abortion, the state cannot enact legislation to protect women (minors) by ensuring that they in fact gave their "voluntary consent." Quite literally, a pimp or sex trafficker or

abusive boyfriend/husband could "aid" or "assist" the woman (minor) with her abortion, and the person could do so with impunity. (R.23, FAC ¶ 121, PageID.171).

Section 28 also harms women (including minors) by changing the standard of care for "matters relating to pregnancy" from "informed consent" to simply "voluntary consent." (R.23, FAC ¶ 122, PageID.171).

Section 28 permits minors to make independent medical decisions and obtain medical treatment involving "reproduction," which includes abortion, contraception, "gender reassignment" medication/procedures, sterilization (which includes "gender reassignment"), and other harmful medical decisions, without requiring parental consent. (R.23, FAC ¶ 128, PageID.173).

School officials or medical professionals could aid or assist a minor with procuring an abortion, obtaining contraception, obtaining "gender reassignment" medication or procedures, and becoming sterilized without parental consent. These officials/professionals could do so with impunity because of § 28. (R.23, FAC ¶ 129, PageID.173).

Section 28 makes abortion, contraception, "gender reassignment" medication/procedures, sterilization, puberty blockers, and other harmful medical procedures constitutional rights (and thus civil rights) as a matter of state law for minors. (R.23, FAC ¶ 130, PageID.173).

Section 28 incentivizes individuals who support abortion, sterilization practices, and "gender reassignment" medication and procedures, among others, to force physicians and other medical professionals to advocate for and provide such objectionable services (including providing such services to minors) under threat of complaints to state entities, including the Michigan Department of Civil Rights ("MDCR") and Michigan Department of Licensing and Regulatory Affairs ("LARA"), which inevitably will result in the loss of licensure and other regulatory harms for the objecting professionals as the state is now mandated to protect and enforce this new civil right to "reproductive freedom." This includes, but is not limited to, government-run medical facilities and private medical facilities that provide care for minors. (R.23, FAC ¶ 131, PageID.173).

Michigan's Elliot-Larsen Civil Rights Act (hereinafter Civil Rights Act), which is enforced through the executive branch of government headed by Defendant Whitmer, prohibits any discrimination based on "sex, sexual orientation, gender identity or expression." Mich. Comp. Laws. § 37.2102. Section 28 provides that "[t]he state shall not discriminate in the protection or enforcement of" the "right to reproductive freedom." The Civil Rights Act permits government and private enforcement of § 28 against private individuals and entities who oppose this new civil

right to "reproductive freedom," including Plaintiffs. (R.23, FAC ¶ 132, PageID.173-74).[4]

Section 28 provides a basis for MDCR and LARA (which regulates health professional licensing) to revoke the licenses of medical professionals and/or to punish these professionals or their businesses for objecting to providing or recommending abortion, sterilization, or "gender reassignment" medication or procedures, among other procedures involving "reproductive freedom" to minors. (R.23, FAC ¶¶ 133-34, PageID.174).

Section 28 is being used by Defendant Whitmer to advance policies, which include, *inter alia*, the repeal of longstanding health regulations and safety standards for abortion clinics and the repeal of laws that require licensing and inspection. These regulations and standards also protect minors. (R.23, FAC ¶ 135, PageID.174; *see also id*. ¶ 136).

Accordingly, § 28 is being used to remove common-sense provisions meant to protect minors who are seeking or undergoing an abortion, as well as basic parental rights. Efforts to stop these harmful policies through legislation run headlong into the

---

[4] (*See, e.g.,* https://www.michiganpublic.org/health/2023-09-06/family-says-catholic-medical-clinic-denied-transgender-girl-care [Michigan Public/NPR reporting on complaint made to Michigan Department of Civil Rights, alleging that a Catholic medical clinic refused to provide a 14-year-old transgendered girl mental health care]).

super-right to "reproductive freedom" created by § 28. (R.23, FAC ¶ 136, PageID.174).

As alleged in the First Amended Complaint:

Article I, § 28 of the Michigan Constitution, which was created, adopted, and enforced under the color of state law and authority, interferes with the liberty interests of parents and guardians, specifically including Plaintiff Parents, to control and direct the upbringing and education of their children in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

Article I, § 28 permits individuals, including public school officials, medical professionals, and others, to aid or assist a minor child with procuring an abortion, obtaining contraception, obtaining "gender reassignment" medication or procedures, and becoming sterilized without parental knowledge or consent and with impunity in violation of Plaintiffs' parental rights protected by the Fourteenth Amendment.

Article I, § 28 permits adults to engage in sexual acts with minors so long as the minor "consents," thereby undermining the right of parents to control and direct the upbringing of their children in violation of Plaintiffs' parental rights protected by the Fourteenth Amendment.

As a direct and proximate result of Article I, § 28 and its enforcement by Defendants, Plaintiffs have suffered irreparable harm, including the loss of their parental rights protected by the Fourteenth Amendment, entitling them to declaratory and injunctive relief.

(R.23, FAC ¶¶ 158-61, PageID.179-80).

**B.    Plaintiffs.**

**1.    Right to Life of Michigan.**

Plaintiff Right to Life of Michigan is a nonpartisan, nonsectarian, nonprofit organization that operates as a 501(c)(4) organization and proposes, lobbies for, and

supports legislation that protects human life, and this includes legislation that protects minors and parental rights. Plaintiff Right to Life of Michigan works on behalf of defenseless or vulnerable human beings, born and unborn, within its identified issues of abortion, infanticide, euthanasia and assisted suicide. Plaintiff Right to Life of Michigan's activities include political action through a PAC and full-time PAC Director. Plaintiff Right to Life of Michigan's activities also include advocating and lobbying for the passage of laws that protect life, and the organization employs two full-time employees for this purpose. (R.23, FAC ¶¶ 13-19, PageID.145-46).

The passage of Proposal 3 (and the creation of Article I, § 28) adversely affects Plaintiff Right to Life of Michigan's activities. Plaintiff Right to Life of Michigan's legislative efforts are thwarted because lawmakers can no longer pass pro-life laws, and its political action is affected because even if pro-life politicians are elected, they are unable to change the law given the breadth of § 28. As a result of § 28, Plaintiff Right to Life of Michigan has had to devote significant resources to counteract its damaging effects. (R.23, FAC ¶¶ 16, 20, PageID.145-46).

Plaintiff Right to Life of Michigan was instrumental in forming, and was a main source of funding for, Citizens to Protect MI Women and Children, a ballot question committee created to defeat Proposal 3. (R.23, FAC ¶ 21, PageID.146). Plaintiff Right to Life of Michigan has been a champion for parental rights. Through its lobbying and other efforts, Plaintiff Right to Life of Michigan has promoted and

sponsored legislation to protect parental rights, specifically including the Parental Rights Restoration Act,[5] which has now been effectively repealed by § 28. (R.23, FAC ¶¶ 13, 22, 99, PageID.145, 146, 165).

Section 28 undermines decades of work and accomplishments of Plaintiff Right to Life of Michigan—work to ensure that Michigan law protects mothers, minors, and parental rights, and that it respects all human life, born and unborn. Section 28 stands as an impenetrable barrier to promoting legislation designed to advance these

---

[5] *See* 1990 Mich. Adv. Legis. Serv. 211 ("An initiation of Legislation to require parental consent for abortions performed on unemancipated minors and to provide a judicial alternative to parental consent; to provide for certain rights, powers, and duties of departments, school districts, individuals, and courts; and to prescribe penalties."); https://www.legislature.mi.gov/Laws/MCL?objectName=MCL-ACT-211-OF-1990 ("This new act was proposed by initiative petition pursuant to Const 1963, art 2, § 9. On September 12, 1990, the initiative petition was approved by an affirmative vote of the majority of the Senators elect and filed with the Secretary of State. On September 12, 1990, the initiative petition was approved by an affirmative vote of the majority of the Members elect of the House of Representatives and filed with the Secretary of State."); https://www.upi.com/Archives/1990/09/12/Michigan-Legislature-passes-veto-proof-parental-consent-abortion-law/2053653112000/ ("Right to Life of Michigan gathered more than 200,000 signatures to bring the measure before the Legislature, well over the 191,726 needed. The signatures were validated on Monday, and the measure officially was introduced on Tuesday. The Legislature had 40 days to act, or the initiative would have automatically been placed on the 1992 general election ballot."); https://umsi580.lsait.lsa.umich.edu/s/abortion-access-mi/page/1990-s ("In 1990, Michigan state lawmakers passed a bill that required anyone under the age of 18 to obtain written consent from their parents before having an abortion. Formally called 'The Parental Rights Restoration Act of 1990,' it was more widely known as the Parental Consent Law. Right to Life of Michigan, a pro-life activist group, revived the parental consent debate after a previous attempt to pass the legislation had been vetoed by the governor.").

interests, thereby undermining the efforts of, and causing injury to, Plaintiff Right to Life of Michigan. (R.23, FAC ¶ 22, PageID.146).

### 2. Parents.

Plaintiffs Andrea Smith and John Hubbard are parents of minor children who attend public schools in Michigan. At the time the complaint was filed, Plaintiff Smith's daughter was a high school student (sophomore) in the Charlotte, Michigan public school system and Plaintiff John Hubbard's daughters were in elementary school (4th grade) and middle school (7th grade) in the Grand Ledge, Michigan public school system. Plaintiffs Celina Asberg and Grace Fisher are also parents of minor children. (R.23, FAC ¶ 52-56, 58, PageID.153-56).

Section 28 removes from Plaintiffs the authority to control and direct the upbringing of their children by permitting government school officials and others to aid and assist their children with obtaining contraception; procuring an abortion; seeking "gender reassignment," puberty blocking medication, or sterilization; and engaging in sexual intercourse or other sex acts, including with an adult, all without Plaintiffs' consent or knowledge and with impunity. Pursuant to § 28, "[a]ll individuals," which includes minors, have a super-right to "reproductive freedom," which includes "all matters relating to pregnancy," thereby including acts necessary to become pregnant. The state is powerless to regulate in this area as the "individual's

autonomous decision making" trumps any state interests, including those that would otherwise be considered "compelling." (R.23, FAC ¶ 58, PageID.155-56).

Section 28 offers Plaintiffs an untenable choice of either removing their children from public school (or not sending them to public school)—a state actor that is mandated to abide by § 28—or subjecting their children to sexual exploitation and related harms as a result of § 28. This harm is exacerbated by the fact that the state has pushed to expand the presence of school-based health clinics. (R.23, FAC ¶¶ 59, 60, PageID.156).

Section 28 also creates an untenable choice for Plaintiffs when it comes to making healthcare decisions for their children. Plaintiffs are fearful about bringing their children to state-operated medical facilities, including the University of Michigan Health Care System, due to the risks of harm caused by § 28. Moreover, the University of Michigan's policies prevent parents from accessing their minor child's medical records, thus exacerbating the harm. (R.23, FAC ¶ 60, PageID.156).

## III. Decision Below.

The district court refused to reach the merits of any of the claims advanced by Plaintiffs. Rather, it dismissed this action on standing grounds.

The court held that Plaintiff Right to Life of Michigan lacked standing as an organization, concluding, in relevant part, as follows:

> The complaint fails to pled sufficient facts to establish standing for Right to Life. Right to Life has not established standing under a diversion-of-

resources theory. An organization cannot "spend its way into standing simply by expending money" advocating against § 28. *FDA*, 602 U.S. at 394. Plaintiffs have not alleged facts that would align with the facts in *Havens*. Moreover, the money Right to Life spends assisting women furthers its mission even if it means less money for other aspects of its mission. *See Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 982 (6th Cir. 2020). Right to Life seeks prospective relief, not damages. Right to Life pleads only "backward-looking costs, not the imminent future injury needed to establishing standing for declaratory and injunctive relief[.]" *Id.*

(R.46, Op. & Order at 18, PageID.458).

The court further stated, in parts relevant to this appeal, as follows:

Plaintiffs refer the court to *Hile v. Michigan*, as a basis for standing for the Plaintiff Organizations, a case involving a political process equal protection claim. *Hile* does not require a different outcome; the court found associational standing, not a direct injury to the organization. In *Hile*, individual parents and an organization challenged a 1970 amendment to Michigan's constitution that prohibited payments of public money to private, denominational, and other nonpublic schools. 86 F.4th at 271. On appeal, the plaintiffs pursued an equal protection claim based on a political process theory of liability. *Id.* at 272-73. The plaintiffs alleged that, because of the amendment, they could not simply lobby their state representatives and senators for government aid and were forced to mount a statewide campaign to amend the constitution. *Id.* at 273. The Sixth Circuit considered whether "the complaint plausibly alleged that Plaintiffs were able and ready to participate in lobbying activities related to public funding for private religious schools, such that they have suffered a concrete injury-in-fact." *Id.* at 274. The court found standing for the individual plaintiff parents because they [were] "ready and able to lobby the Michigan legislature to allow them to use their 529 plans for religious-school tuition." *Id.* at 275. The organization had standing because the individual parents had standing. *Id.* Here, none of the individual plaintiffs plead that that they are ready and able to participate in lobbying activities.

(R.46, Op. & Order at 22, PageID.462).

The district court held that the individual Plaintiffs lacked standing to advance a parental right claim, stating, in relevant part:

> [Plaintiffs] allege that § 28 gives them a "Hobson's choice of either removing their children from public school or subjecting their children to sexual exploitation." (*Id.* ¶ 59.) They additionally claim that § 28 makes them "fearful about bringing their children to state-operated medical facilities . . . due to the risks of harm caused by § 28." (*Id.*)
>
> Plaintiff Parents have not alleged sufficient facts to show an injury in fact. Plaintiff Parents have not demonstrated an actual, concrete injury. Plaintiffs do not plead that § 28 compels or requires any action by employees of public schools. Section 28 does not mention school officials, let alone require school officials or a school district to do anything. Plaintiffs plead only speculative future injuries. Plaintiffs have not pled facts to show even a likelihood that their children will seek contraception, an abortion, gender reassignment, puberty blocking medication, sterilization or an intimate relationship with an adult. And again, *<u>the possibility of future harm hinges on a legal conclusion that the court need not accept for the purpose of this motion</u>*. Plaintiffs point to the language in § 28, that "all individuals have a fundamental right to reproductive freedom," and contend that the language necessarily applies to minors. (Compl. ¶ 58.)

(R.46, Op. & Order at 13 [emphasis added], PageID.453). In other words, the district court rejected Plaintiffs' allegation that § 28, by its plain language, applies to minors and thus removes from them (and their parents) legal protections that they and their parents rely upon to guard them from harm.

The district court further rejected Plaintiff Right to Life of Michigan's allegations that § 28 harms their *future* lobbying activities, which includes lobbying for laws that protect parental rights. Indeed, Plaintiff Right to Life of Michigan is

organized as a 501(c)(4) so that it *can* engage in lobbying efforts—which are "forward looking."

The court's conclusions constitute error, and they are further undermined by the fact that § 28 served as the basis for repealing laws, including those advanced by Plaintiff Right to Life of Michigan, that were passed to protect children from the predatory harms that their parents fear.

As set forth in the First Amended Complaint, § 28 removes legal protections that Plaintiffs, as parents, rely upon when they send their children to public schools or to a government-run medical facility. The district court's dismissal of Plaintiffs' allegations is clear error, and so too, *inter alia*, is its claim that Plaintiff Right to Life of Michigan pleads only "backward-looking costs." *See infra*.

## STANDARD OF REVIEW

This Court "review[s] a district court's decision regarding a plaintiff's Article III standing *de novo.*" *Murray v. United States Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012). Defendants mounted a facial attack on standing under Rule 12(b)(1). Fed. R. Civ. P. 12(b)(1). "In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *see generally Nietzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a

complaint's factual allegations.").

Moreover, "[i]n evaluating standing at this juncture, [the Court] must assume that the party asserting federal jurisdiction *is correct on the legal merits of his claim* that a decision on the merits would be favorable and that the requested relief would be granted." *Cutler v. United States HHS*, 797 F.3d 1173, 1179 (D.C. Cir. 2015) (internal quotations and citations omitted, cleaned up) (emphasis added).

Throughout its decision, the district court violated this rule by dismissing the "merits" of Plaintiffs' claims as simply "legal conclusions" that it need not accept as true. In other words, the district court improperly disregarded Plaintiffs' claims as to the effects of, and harms caused by, § 28, claiming that they were "legal conclusions," and then using that as a basis for dismissing the case on standing grounds. This was improper.

## SUMMARY OF THE ARGUMENT

Plaintiff Right to Life of Michigan and the individual Plaintiffs have standing to advance their Fourteenth Amendment parental rights challenge to § 28. Plaintiff Right to Life of Michigan advocates for parental rights, particularly through its lobbying efforts and the sponsorship of laws designed to protect these rights. Plaintiff Right to Life's future lobbying and legislative efforts on behalf of minors and their parents are thwarted as § 28 has robbed them and the Michigan legislature of any authority and power to regulate on behalf of minors in the area of "reproductive

freedom." Prospective relief is entirely appropriate.

Section 28 also violates the individual Plaintiffs' right to control and direct the upbringing and education of their children, including interfering with Plaintiffs' fundamental right to make decisions concerning the medical care of their children, in violation of the Fourteenth Amendment. The harms Plaintiffs suffer as a result are imminent and real as they must now choose between the benefits associated with accessing and using government facilities and programs for their children, such as public schools and government-run medical facilities, and exposing their children to grave risks. Plaintiffs should not have to surrender their parental rights as a condition for sending their children to public schools or utilizing government medical services. Plaintiffs have standing to advance their parental rights claims, and prospective relief is entirely appropriate.

## ARGUMENT

### I. Plaintiffs Have Standing to Advance a Parental Rights Claim.

#### A. Parental Rights Are Protected by the Fourteenth Amendment.

We begin by addressing the substantive parental rights claim to help demonstrate that Plaintiffs have standing to advance this legal challenge to § 28.

The Supreme Court has long recognized a fundamental right of "parents and guardians to direct the upbringing and education of children under their control." *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534-55 (1925) (citing *Meyer v. Neb.,* 262

U.S. 390 (1923)).

"[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion); *see also Prince v. Mass.*, 321 U.S. 158, 166 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.").

Accordingly, "[p]arents possess a fundamental right to make decisions concerning the medical care of their children." *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 418 (6th Cir. 2019). In *Kanuszewski*, this Court reviewed a Michigan program under which the state collected and stored blood samples from newborns to test for diseases. *See id.* at 404. The court concluded that qualified immunity shielded state employees from the parent plaintiffs' claims regarding the initial collection, *see id.* at 415-16, but that the ongoing storage without informed consent violated the parents' fundamental right to direct the medical care of their children, *see id.* at 418-21.

This Court's decision was consistent with the long-standing principle, protected by the Fourteenth Amendment, that parents, and not the state, are the primary decision makers for their children. "[O]ur constitutional system long ago rejected any notion that a child is 'the mere creature of the State' and, on the contrary, asserted that

parents generally 'have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations.'" *Parham v. J.R.*, 442 U.S. 584, 602 (1979) (second alteration in original) (quoting *Pierce*, 268 U.S. at 535). "The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions," *id.*, and "historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children," *id.* (citing 1 W. Blackstone, *Commentaries*; 2 J. Kent, *Commentaries on American Law*).

"Simply because the decision of a parent . . . involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state. The same characterizations can be made for a tonsillectomy, appendectomy, or other medical procedure." *Parham*, 442 U.S. at 603. Ultimately, "[p]arents can and must make those judgments." *Id.*

At the end of the day, "[p]arents possess a fundamental right to make decisions concerning the medical care of their children." *Kanuszewski*, 927 F.3d at 418. Section 28 eviscerates that fundamental right for grave, harmful, and in some cases, immoral procedures such as abortion and sterilization. And worse, § 28 immunizes those individuals who aid or assist a minor in procuring procedures such as abortion. As the Eleventh Circuit stated in *Arnold v. Board of Education*, 880 F.2d 305 (11th Cir. 1989):

> Coercing a minor to obtain an abortion or to assist in procuring an abortion and to refrain from discussing the matter with the parents unduly interferes with parental authority in the household and with the parental responsibility to direct the rearing of their child. This deprives the parents of the opportunity to counter influences on the child the parents find inimical to their religious beliefs or the values they wish instilled in their children.

*Id*. at 313.

Through § 28, the state has granted minors the "right" to obtain highly objectionable and harmful procedures such as "contraception, sterilization, [which includes various 'gender reassignment procedures,' and] abortion" (R.23, FAC ¶ 81, PageID.161),[6] without any parental consent, knowledge, or involvement (R.23, FAC ¶¶ 84, 99, 101, 128, 129, 136, 159, 160, PageID.162, 165, 166, 173, 174, 179). Moreover, § 28 provides broad immunity for anyone who aids or assists a minor in obtaining such procedures.[7] Accordingly, state medical facilities (*e.g.*, the University of Michigan Health System), must provide these objectionable procedures to a minor, and there is nothing a parent could do about it. Section 28 allows an adult (such as a school official) to aid or assist the minor with impunity. Plaintiffs in this case have children that attend public schools, and public schools and their officials must comply with constitutional mandates.

This case is unlike *Doe v. Irwin*, 615 F.2d 1162 (6th Cir. 1980), which involved

---

[6] Minors may also be targeted for use as surrogates as this involves "reproductive freedom."

[7] By its own terms, § 28 applies to "perceived" pregnancy outcomes. In other words, the minor asserting the "right" need not be pregnant.

the establishment of a "family planning clinic" that distributed contraceptives to minors without parental notice. As this Court noted, there was "no prohibition against the [parents] participating in decisions of their minor children on issues of sexual activity and birth control." *Id*. at 1168. Here, the state, through § 28, has granted minor children plenary authority as a matter of state constitutional law to make grave and serious decisions "on issues of sexual activity and birth control" without the need for any parental involvement, and, indeed, *by granting the minors the power of a constitutional right to supersede parental authority*. Here, the state is required to "protect" and "enforce" the minor's right over and above any right of a parent to intervene. Mich. Const. art. I, § 28(2).

Put simply, § 28 eviscerates the rights of parents to direct the upbringing of their children in a most fundamental way, and it compels the state to interfere with the parent-child relationship as the state is required to "protect" and "enforce" the minor's right. *See* Mich. Const. art. I, § 28(2).

Section 28 also subjects children to sexual predators who seek to hide their misdeeds (and who are permitted to do so as a matter of state constitutional law) by aiding and assisting their minor victims to procure an abortion. Additionally, because "reproductive freedom" is broadly construed, it necessarily includes the act of reproduction (sexual intercourse—a "potential . . . pregnancy outcome"), thus eviscerating laws against statutory rape. So long as the minor consents to the sex act,

the "freedom" to engage in the act is protected by § 28. Section 28 prohibits the enforcement of criminal statutes against statutory rape and child sexual abuse, female genital mutilation, and other similar statutes designed to protect children from exploitation. As noted above, sex between a young girl and a middle-aged man is now protected by this new right so long as the child consents. In fact, § 28 makes it impossible to enforce or enact a statute prohibiting certain sexual activity, such as pedophilia and incest.

This parade of horribles, which interferes with the rights of parents to protect and raise their children, is made possible by § 28. The district court was dismissive of these serious harms that keep parents awake at night. Nonetheless, the secrecy of this is a large part of the problem (and a basis for the violation). That is why Plaintiff Right to Life of Michigan has worked so tirelessly to pass the Parental Rights Restoration Act (among other efforts), which has now been eviscerated by § 28. Through § 28, the state is telling parents that it knows what is best for their children when it comes to "reproductive freedom." Simply put, § 28 is exceedingly harmful to children, and it eviscerates the fundamental rights of parents in the process.

As noted, Plaintiff Right to Life of Michigan has been a champion for parental rights, particularly through its lobbying efforts and the sponsorship of laws designed to protect parental rights. Absent relief from this Court, Plaintiff Right to Life of Michigan's future lobbying and legislative efforts on behalf of minors and their

parents are thwarted as § 28 has robbed them and the Michigan legislature of their authority and power to regulate on behalf of minors in the area of "reproductive freedom."

**B.** **Plaintiffs Have Suffered Cognizable Injuries that Are Fairly Traceable to § 28 and Likely to Be Redressed by the Requested Relief.**

Article III of the Constitution confines federal courts to adjudicating actual "cases" or "controversies." U.S. Const. art. III, § 2. To give meaning to Article III's "case" or "controversy" requirement, the courts have developed several justiciability doctrines, including standing. *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 157 (2014). "The doctrine of standing gives meaning to these constitutional limits by identifying those disputes which are appropriately resolved through the judicial process." *Id.* (internal quotations and citation omitted). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To invoke the Court's jurisdiction, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

In the context of a motion to dismiss, the injury-in-fact requirement is "very generous," only requiring Plaintiffs to "allege [ ] some specific, identifiable trifle of injury." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) ("In the

context of a motion to dismiss, we have held that the [i]njury-in-fact element is not Mount Everest.  The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege [ ] some specific, identifiable trifle of injury.") (internal quotations and citation omitted); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562-63 (1992) ("Of course, the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing.").

As noted, "[i]n evaluating standing at this juncture, [the court] **_must_** _assume that the party asserting federal jurisdiction is correct on the legal merits of his claim that a decision on the merits would be favorable and that the requested relief would be granted_." *Cutler*, 797 F.3d at 1179 (internal quotations and punctuation omitted) (emphasis added).

Additionally, "*the presence of **one party** with standing is sufficient to satisfy Article III's case-or-controversy requirement*." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006) (emphasis added); *Bowsher v. Synar*, 478 U.S. 714, 721 (1986) (finding it sufficient that at least one plaintiff had standing to invoke the Court's jurisdiction to hear and decide the case); *ACLU v. NSA*, 493 F.3d 644, 652 (6th Cir. 2007) ("[F]or purposes of the asserted declaratory judgment . . . it is only necessary that one plaintiff has standing."). As discussed further below, while all of the parties have standing in this case, the presence of

Plaintiff Right to Life of Michigan alone was sufficient for the district court to exercise its jurisdiction to decide this case. *See Hile v. Mich.*, 86 F.4th 269 (6th Cir. 2023) (holding that the plaintiffs had standing to challenge Article VIII, § 2 of the Michigan Constitution because, *inter alia*, the "allegations render it at least plausible that if Article VIII, § 2 is declared unconstitutional, Plaintiffs would lobby their representatives to change Michigan's law concerning 529 plans").

At the end of the day, whether a party has standing to invoke federal court jurisdiction should not be based upon the popularity of the issues presented or the political views of the plaintiffs (or judges for that matter). To do so would make a mockery of our system of justice. And to make this point, Plaintiffs cited *Romer v. Evans*, 517 U.S. 620 (1996). The district court rejected the argument, stating:

> Plaintiffs liken this action to *Romer*, a lawsuit involving a challenge to an amendment to Colorado's constitution prohibiting statutes and ordinances affording protections or preferences for homosexual, lesbian or bisexual persons. With a cursory glance, *the parallels between the two lawsuits appear obvious*. Plaintiffs argue that "*Romer* demonstrates that Plaintiffs have standing" (ECF No. 34 PageID.304). But none of the opinions, not in the state trial court, the state supreme court or the United States Supreme Court, discussed or even considered standing. When opinions do not address issues like standing, the opinions (at least on that issue) have no precedential effect. *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 91 (1988) ("We have often said that drive-by jurisdictional rulings . . . have no precedential effect."); *Stafford v. IBM Corp.*, 78 F.4th 62, 69 (2d Cir. 2023) ("In any event, *Zeiler* did not address standing or mootness, and 'drive-by jurisdictional rulings of this sort have no precedential effect.'") (citation omitted); *Gettman v. DEA*, 290 F.3d 430, 436 (D.C. Cir. 2002) ("Where a court has simply assumed standing, that assumption creates no precedent upon which future litigants may rely. This is well established.").

(R.46, Op. & Order at 6-7 [emphasis added], PageID.446-47).  Plaintiffs understand the general point of the district court, but the nature of this case and *Romer* make them rather unique.  Indeed, the broader point is that a court should not (and cannot) simply assume jurisdiction either way.  The main point Plaintiffs advance here and to which *Romer* supports is the point made by the case cited by the district court in its ruling noted above.  As the Supreme Court emphasized in *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83 (1988), "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  *Id.* at 94 (internal citation and quotations omitted).

While the *Romer* plaintiffs filed their original action in state court and satisfied the more broadly construed state court standing rules, in order for the Supreme Court to hear and decide the federal constitutional issues (which it did), the Court had to independently conclude that it had jurisdiction to do so under Article III.  *See, e.g., Pennell v. San Jose*, 485 U.S. 1, 6, 8 (1988) (addressing standing under Article III before addressing the merits of a case originating in state court, noting that "the record in this case leaves much to be desired in terms of specificity for purposes of determining the standing of appellants to challenge this ordinance," and observing that "[u]ndoubtedly this is at least in part a reflection of the fact that the case originated in a state court where Art. III's proscription against advisory opinions may not apply").

Standing is a threshold question that must be resolved before a federal court's power to rule is invoked. That fundamental requirement of Article III applied in *Romer* as well. Consequently, since the injuries in *Romer* were sufficient for standing purposes, the similar injuries in this case are likewise sufficient for standing. What was sufficient in *Romer* should be sufficient here if justice is blind and equal for all parties and all issues.

The successful challengers of Colorado's Amendment 2, which was held invalid by the U.S. Supreme Court in *Romer* on federal constitutional grounds, "included the three municipalities whose ordinances [the Court] cited and certain other governmental entities which had acted earlier to protect homosexuals from discrimination *but would be prevented by Amendment 2 from continuing to do so*." *Romer*, 517 U.S. at 625 (emphasis added). Additionally, the successful challengers in *Romer* also included homosexual persons, some of them government employees, who alleged that the amendment's enforcement would subject them to the "*risk* of discrimination" on the basis of their sexual orientation, *id.* at 625 (emphasis added), as there were no facts demonstrating that Amendment 2 caused any *actual* discrimination.[8]

Indeed, there were no facts in *Romer* that any plaintiff actually suffered a

---

[8] It's interesting (if not entirely hypocritical) that "risk of discrimination" is a concrete injury when dealing with cases involving homosexuality, but it is apparently a hypothetical "fear" when addressing more conservative issues related to abortion.

concrete injury of discrimination as a result of the passage of Amendment 2 (nor could there have been as the challenge was immediate). *See Romer*, 517 U.S. at 625 ("Soon after Amendment 2 was adopted, this litigation to declare its invalidity and enjoin its enforcement was commenced. . . ."). And Amendment 2 did far less than § 28 does as it simply prohibited the creation of *special* legal rights based on sexual preferences ("the choice of sexual partners"). *Romer*, 517 U.S. at 624; *see id.* at 638 (demonstrating that "[t]he amendment prohibits *special treatment* of homosexuals, and nothing more") (Scalia, J., dissenting). The exceedingly high bar for standing that the district court imposed upon Plaintiffs in this case must be rejected, lest we become a judicial system where the courtroom doors remain open for some preferred causes yet closed for others. At a minimum, *Romer* demonstrates that Plaintiffs have standing and that their claims are ripe for review. It also demonstrates that there is state action in this case, thereby triggering constitutional protections.[9] And while the Court in *Romer* may not have directly addressed standing, Article III confines our federal courts to "cases or controversies." If the Court did not find (whether explicitly or implicitly) standing in that case, then it was without jurisdiction to hear the matter and its decision on the merits was lawless.

---

[9] *See generally Denver Area Educ. Telcoms. Consortium v. FCC*, 518 U.S. 727, 782 (1996) (Kennedy, J., dissenting) ("State action lies in the enactment of a statute altering legal relations between persons, including *the selective withdrawal from one group of legal protections against private acts*, regardless of whether the private acts are attributable to the State.") (citing *Hunter v. Erickson*, 393 U.S. 385, 389-90 (1969) (finding state action under the Fourteenth Amendment)) (emphasis added).

This Court's decision in *Hile v. Michigan*, 86 F.4th 269 (6th Cir. 2023), further supports Plaintiffs' standing, particularly as it relates to Plaintiff Right to Life of Michigan (which is prevented from "lobbying" for laws to protect minors and parental rights), thus providing the court the jurisdiction to hear and decide this challenge.

*Hile* involved a federal constitutional challenge to Article VIII, § 2 of the Michigan Constitution. While the court ultimately concluded that the plaintiffs' constitutional claims failed, the Court held that the challengers had standing to advance their claims. As stated by this Court in *Hile*:

> [The] allegations render it at least plausible that if Article VIII, § 2 is declared unconstitutional, Plaintiffs would lobby their representatives to change Michigan's law concerning 529 plans. *See Ashcroft* [556 U.S. at 679].

> Plaintiffs have also satisfied the final two elements of standing— causation and redressability. *See Lujan*, 504 U.S. at 560-61. Their injury is caused by Article VIII, § 2 because if there were not a constitutional prohibition on public funding for private schools, Plaintiffs could lobby their representatives for aid "with efficacy." If Plaintiffs obtain declaratory and injunctive relief, moreover, their injury will be redressed because they will be able to lobby on equal footing with those seeking aid for public schools. And if the individual Plaintiffs have standing, the PACE Foundation consequently has organizational standing. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). As a result, Plaintiffs' claims are constitutionally adequate.

*Hile*, 86 F.4th at 285.

For reasons that the plaintiffs in *Hile* had standing to advance their federal constitutional challenge to a provision of the Michigan Constitution, Plaintiffs in this

case similarly have standing. More particularly, if Plaintiff Right to Life of Michigan obtains declaratory and injunctive relief, their injury will be redressed as it (a 501(c)(4) organization) will again have the ability to lobby for, promote, and support laws like the Parental Rights Restoration Act.

Finally, in *Hooker v. Weathers*, 990 F.2d 913, 915 (6th Cir. 1993), this Court concluded that an organization "can establish standing by alleging a concrete and demonstrable injury, including an injury arising from a purportedly illegal action [that] increases the resources the group must devote to programs independent of its suit challenging the action." (quotations and citations omitted). Similarly, in *Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982), the Supreme Court held that the organization had standing, concluding as follows:

> "Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services. Plaintiff HOME has had to devote significant resources to identify and counteract the defendant's *[sic]* racially discriminatory steering practices." . . .
>
> If, as broadly alleged, petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income home-seekers, there can be no question that the organization has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests . . . . We therefore conclude, as did the Court of Appeals, that in view of HOME's allegations of injury it was improper for the District Court to dismiss for lack of standing the claims of the organization in its own right.

*Havens Realty Corp.*, 455 U.S. at 379; *see also id*. at 379, n.20 ("That the alleged

injury results from the organization's noneconomic interest in encouraging open housing does not affect the nature of the injury suffered . . ., and accordingly does not deprive the organization of standing.") (internal citation omitted). As set forth in the First Amended Complaint:

> Right to Life of Michigan has many programs that assist women in crisis pregnancy situations and/or help women to choose life for their unborn baby. These programs result in the expenditure of the organization's resources, and the need for these programs has substantially increased as a result of Proposal 3 (and the creation of Article I, § 28), thereby resulting in the need to substantially increase the resources the organization must expend for these programs.
>
> As a result of the passage of Proposal 3 (and the creation of Article I, § 28), Right to Life of Michigan has had to devote significant resources to counteract its damaging effects.
>
> * * *
>
> Right to Life of Michigan's activities include political action (*i.e.* getting pro-life politicians elected to local, state, and federal levels of government, specifically including the Michigan Legislature) through a PAC and full-time PAC Director.
>
> * * *
>
> The passage of Proposal 3 (and the creation of Article I, § 28) adversely affects Right to Life of Michigan's activities. In particular, Right to Life of Michigan's legislative efforts are thwarted because lawmakers can no longer pass pro-life laws, and its political action is affected because even if pro-life politicians are elected, they are unable to change the law given the breadth of Article I, § 28 (also referred to herein as § 28 or Section 28).

(R.23, FAC ¶¶ 15, 16, 18-20, PageID.145-46).

Here, § 28 has frustrated Plaintiff Right to Life of Michigan's efforts to protect women and children from the harm of abortion. Section 28 has plainly frustrated

Plaintiff Right to Life of Michigan's efforts to promote pro-life candidates and causes and to lobby for pro-life laws. These are *future harms* and not "backward-looking costs" as the district court wrongly concluded. (*See* R.46, Op. & Order at 18, PageID.458). In sum, § 28 has caused Plaintiff Right to Life of Michigan to devote significant resources to counteract § 28's discriminatory and harmful effects, and it is harming the organization's ability to advocate and lobby for future legislation to promote its interests, thereby causing a direct injury to the organization's operation. Plaintiffs have standing to advance their parental rights claim.

The fairly traceable and redressability elements further demonstrate Plaintiffs' standing in this case. The fairly traceable element of standing, which is a low threshold, is not difficult to establish here. *Carter*, 822 F.3d at 55 (noting that the "fairly traceable" element "does not create an onerous standard," and that "it is a standard lower than that of proximate causation"). As noted previously, in *Obergefell*, the Supreme Court struck down Michigan's marriage amendment, which was also passed by voter initiative. In *Obergefell*, the defendants were "state officials responsible for enforcing the laws in question." *Obergefell*, 576 U.S. at 655. As in this case, these "state officials" included the Michigan Governor and the Michigan Attorney General in their official capacities. *See id*; *see also Deboer v. Snyder*, 973 F. Supp. 2d 757 (E.D. Mich. 2014) (filing challenge to the Michigan marriage amendment against the Michigan Governor and Attorney General). Moreover, in

*Northland Family Planning Center v. Nessel*, Case No. 24-000011-MM, 2025 Mich. Ct. Cl. LEXIS 1 (May 13, 2025), a case which struck down several provisions of state law under § 28, the lawsuit was also brought against the Michigan Attorney General. In short, the injuries alleged are the result of state action, and the principal state officials responsible for enforcing § 28 are the Michigan Governor and Attorney General—the senior executive officials for the state. *See generally Denver Area Educ. Telcoms. Consortium*, 518 U.S. at 782 (Kennedy, J., dissenting) ("State action lies in the enactment of a statute altering legal relations between persons, including the selective withdrawal from one group of legal protections against private acts, regardless of whether the private acts are attributable to the State.") (citing *Hunter*, 393 U.S. at 389-90 (finding state action under the Fourteenth Amendment)).

Finally, the injury caused by the violation to parental rights can be redressed by a court, as evidenced by the Court's decisions in *Romer* and *Obergefell*. For example, a declaration that § 28 does not apply to minors as doing so violates the Fourteenth Amendment would provide an appropriate remedy that would redress the alleged harms (as would an injunction halting the application of § 28 as applied to minors). *Friends of the Earth, Inc.*, 528 U.S. at 185-86 ("It can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress."). For example, should a court declare that

§ 28 does not apply to minors as doing so violates parental rights protected by the Fourteenth Amendment, Plaintiff Michigan Right to Life could again lobby for and pursue state legislation to protect the rights of parents and their minor children. This alone demonstrates that Plaintiff Right to Life of Michigan has been injured, that the injury is fairly traceable to the challenged state action at issue, and that the injury could be redressed by a favorable court decision. The same is true for the individual Plaintiffs who could now send their children to public schools and government medical facilities without fear of the harms caused by § 28.

In the final analysis, Plaintiffs have standing to advance their constitutional challenge to § 28.

## CONCLUSION

Based on the foregoing, the Court should reverse the district court and remand for further proceedings.

Respectfully submitted,

AMERICAN FREEDOM LAW CENTER

/s/ *Robert J. Muise*
Robert J. Muise, Esq. (P62849)
PO Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756; Fax: (801) 760-3901
rmuise@americanfreedomlawcenter.org

GREAT LAKES JUSTICE CENTER

/s/ *William Wagner*
William Wagner, Esq. (P79021)
5600 W. Mount Hope Highway
Suite 2
Lansing, Michigan 48917
Tel: (517) 993-9123
prof.wwjd@gmail.com

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a), the foregoing Brief is proportionally spaced, has a typeface of 14 points Times New Roman, and contains 11,702 words, excluding those sections identified in Fed. R. App. P. 32(f).

AMERICAN FREEDOM LAW CENTER

/s/ *Robert J. Muise*
Robert J. Muise, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system. I further certify that all of the participants in this case are registered CM/ECF users.

AMERICAN FREEDOM LAW CENTER

*/s/ Robert J. Muise*
Robert J. Muise (P62849)

## ADDENDUM: DESIGNATION OF RELEVANT
## DISTRICT COURT DOCUMENTS

| No. | PageID # | DESCRIPTION |
|---|---|---|
| R.1 | 1-36 | Complaint |
| R.23 | 141-87 | First Amended Complaint |
| R.41 | 386-90 | Pls.' Notice of Supplemental Authority |
| R.46 | 441-463 | Opinion and Order Granting Defendants' Motion to Dismiss |
| R.47 | 464 | Judgment |
| R.48 | 465-66 | Notice of Appeal |